| | | |
|---|---|---|
| NICOLE B. SOJAT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 3:13-CV-270 |
| | ) | (VARLAN/SHIRLEY) |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Court of Plaintiff's Motion for Judgment on the Pleadings and Memorandum in Support [Docs. 11, 12] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 17, 18]. Plaintiff Nicole B. Sojat seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), the final decision of the Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner").

The Plaintiff filed a Title II application for a period of disability and disability insurance benefits as well as a Title XVI application for supplemental security income ("SSI") under the Social Security Act on December 15, 2009, alleging disability since December 21, 2001, due to irritable bowel syndrome, abdominal pain, hyperthyroidism, hypertension, anxiety, and depression. Her application was denied initially and upon reconsideration. Plaintiff then requested a hearing, which was held before ALJ Frank Letchworth, in Knoxville, Tennessee,

1

on September 8, 2011. The Plaintiff was present and testified. The ALJ issued an unfavorable decision on December 15, 2011, finding the Plaintiff was not disabled. The Appeals Council denied Plaintiff's request for review of that decision; thus, the decision of the ALJ became the final decision of the Commissioner. The Plaintiff now seeks judicial review of the Commissioner's decision.

**I.     ALJ FINDINGS**

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2006.
>
> 2. The claimant has not engaged in substantial gainful activity since December 21, 2001, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The claimant has the following combination of severe impairments: irritable bowel syndrome, abdominal pain, hyperthyroidism, hypertension, anxiety, and depression (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except that she can only do simple 1 and 2 step instructions; she can have only casual interactions with others; she can have no more than occasional changes in job settings and routines; and she can do no production rate or quota jobs.
>
> 6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

2

7. The claimant was born on December 18, 1958 and was 43 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 31, 2001, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

[Tr. 11-19].

## II. DISABILITY ELIGIBILITY

This case involves an application for disability insurance benefits as well as SSI benefits. An individual qualifies for disability insurance benefits if he or she: (1) is insured for disability insurance benefits; (2) has not attained retirement age; (3) has filed an application for disability insurance benefits; and (4) is under a disability. 42 U.S.C. § 423(a)(1). To qualify for SSI benefits, an individual must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. See 42 U.S.C. § 1382(a).

"Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than

3

twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). An individual shall be determined to be under a disability only if his or her physical or mental impairment or impairments are of such severity that he or she is not only unable to do previous work but cannot, considering the individual's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which the individual lives, or whether a specific job vacancy exists for the individual, or whether the individual would be hired if he or she applied for work. §§ 423(d)(2)(B), 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). The plaintiff bears the burden of proof at the first four steps. Walters, 127 F.3d at 529. The burden shifts to the Commissioner at step five. Id. At the fifth step, the Commissioner must prove that there is work available in the national economy that the plaintiff could perform.

4

Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

III.   **STANDARD OF REVIEW**

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007) (quotation omitted); see also Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison v. NLRB, 305 U.S. 197, 229 (1938)).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case de novo, nor resolve conflicts in the evidence,

5

nor decide questions of credibility." Walters, 127 F.3d at 528.

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004). The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless.

An ALJ's violation of the Social Security Administration's procedural rules is harmless and will not result in reversible error "absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses." Wilson, 378 F.3d at 546-47. Thus, an ALJ's procedural error is harmless if his ultimate decision was supported by substantial evidence *and* the error did not deprive the claimant of an important benefit or safeguard. See id. at 547.

On review, Plaintiff bears the burden of proving his entitlement to benefits. Boyes v. Sec'y. of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

**IV. POSITIONS OF THE PARTIES**

The Plaintiff argues that the ALJ erred in two respects. First, the Plaintiff maintains that the ALJ applied the wrong legal standard when he determined that the Plaintiff did not satisfy

6

Case 3:13-cv-00270-TAV-CCS   Document 21   Filed 07/03/14   Page 6 of 15   PageID #: 643

Listing 12.06C of the Listing of Impairments.[1]  [Doc. 12 at 11].  Second, the Plaintiff asserts that the ALJ's findings regarding her social functioning are vague and inconsistent.  [Id. at 14].

The Commissioner responds that the ALJ correctly determined that the Plaintiff did not meet the criterion for Listing 12.06C.  [Doc. 18 at 4].  In addition, the Commissioner contends that the ALJ's residual functioning capacity finding properly accounts for the Plaintiff's moderate to marked difficulties in social functioning.  [Id. at 9].

In the Plaintiff's reply, she maintains that the Commissioner does not dispute that the ALJ applied the wrong legal standard under Listing 12.06C, or that the error was harmless, and has therefore waived the argument.  [Doc. 19 at 2].  In addition, the Plaintiff states that the Commissioner misapplies her own polices in determining that Social Security Ruling 96-9 is irrelevant to the Plaintiff's argument that the ALJ erred in assessing the Plaintiff's social functioning.  [Id. at 4-5].

## V.  ANALYSIS

The Court will address the Plaintiff's allegations of error in turn.

### A.  Listing 12.06C

The Plaintiff argues that the ALJ applied the wrong legal standard in determining that she did not meet the criterion for Listing 12.06C.  [Doc. 12 at 12].  In this regard, the Plaintiff maintains that in order for her anxiety to meet listing severity, her anxiety must result "in complete inability to function independently outside the area of [her] home."  [Id.].  The Plaintiff points out that in the ALJ's decision, he omitted the word "independently" when he concluded that the Plaintiff's impairment did not result in a complete inability to function outside of her

---

[1] The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, Appendix 1.

home. [Id.]. In other words, the Plaintiff asserts that there is a difference between the ALJ's finding that she can function outside of her home and the requirement of "paragraph C" that she not only be able to function outside of her home, but must be able to do so independently. [Id.].

As stated above, at step three of the sequential evaluation, the plaintiff has the burden of establishing that her impairment meets or equals a listed impairment. Walters, 127 F.3d at 529; Foster v. Halter, 279 F.3d 348, 352 (6th Cir. 2001). To do so, the plaintiff must show that: (1) she meets all of the criteria in the listing; or (2) her "impairment is the medical equivalent of a listing, which means it is 'at least equal in severity and duration to the criteria of any listed impairment.'" Reynolds v. Comm'r of Soc. Sec., 424 F. App'x 411, 414 (6th Cir. Mar. 31, 2011) (quoting 20 C.F.R. §§ 404.1526(a) and 416.926(a)) (additional citations omitted).

Listing 12.06, which deals with anxiety related disorders, is described as follows:

> In these disorders anxiety is either the predominant disturbance or it is experienced if the individual attempts to master symptoms; for example, confronting the dreaded object or situation in a phobic disorder or resisting the obsessions or compulsions in obsessive compulsive disorders.
>
> The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in both A and C are satisfied.
>
> A. Medically documented findings of at least one of the following:
>
>> 1. Generalized persistent anxiety accompanied by three out of four of the following signs or symptoms:
>>     a. Motor tension; or
>>     b. Autonomic hyperactivity; or
>>     c. Apprehensive expectation; or
>>     d. Vigilance and scanning;
>> or
>>
>> 2. A persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or situation; or

8

> 3. Recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week; or
>
> 4. Recurrent obsessions or compulsions which are a source of marked distress; or
>
> 5. Recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress;
>
> AND
>
> B. Resulting in at least two of the following:
>
> > 1. Marked restriction of activities of daily living; or
> >
> > 2. Marked difficulties in maintaining social functioning; or
> >
> > 3. Marked difficulties in maintaining concentration, persistence, or pace; or
> >
> > 4. Repeated episodes of decompensation, each of extended duration.
>
> OR
>
> C. Resulting in complete inability to function independently outside the area of one's home.

20 C.F.R. Pt. 404, Subpt. P, App. 1 (12.06).

In regard to "paragraph C," the ALJ found that the Plaintiff's impairments did not meet or equal the criterion. [Tr. 14]. Specifically, the ALJ found that the Plaintiff's "impairments[] have not resulted in a complete inability to function outside the area of her home." [Id.]. In support of his conclusion, the ALJ cited to the subsequent section of the disability determination where he addressed the medical evidence of record in assessing the Plaintiff's residual function capacity. [Id.]. In that section, the ALJ noted that beginning in June 2002, the Plaintiff was diagnosed with acute stress disorder. [Tr. 16]. While the Plaintiff was responding well to

9

psychotropic medication and her chronic post-traumatic stress was stable in April 2003, her Global Assessment of Functioning ("GAF") score was 50 in 2009, suggesting serious symptoms. [Id.]. The ALJ noted that in March 2010, the Plaintiff's GAF score improved to 60, suggesting moderate symptoms. [Id.]. In addition, her mood was reported elevated, but she exhibited symptoms of post-traumatic stress which interfered in her life. [Id.]. In November 2010, the Plaintiff was diagnosed with major depressive disorder, recurrent and mild, and post-traumatic stress disorder. [Id.]. The following month, the Plaintiff reported that her mood was better and denied feeling depressed. [Id.]. Finally, in May 2011, the Plaintiff's GAF score changed to 55, continuing to suggest moderate symptoms. [Id.].

The ALJ next addressed the opinion evidence of record beginning with Charlene Allen, LCSW, LADAC, the Plaintiff's therapist of two years. [Tr. 16, 532]. Ms. Allen reported that the Plaintiff exhibited symptoms including ongoing nightmares, flashbacks, hypervigilance, intrusive thoughts, and an inability to regulate her affect and emotions. [Tr. 16]. The Plaintiff was reported to have ongoing daily struggles with anxiety and became easily stressed in new situations. [Id.]. In addition, she demonstrated poor ability in concreting and focusing, attending to daily needs, and coping with stress in any form. [Id.]. Moreover, the Plaintiff isolated herself, became withdrawn, and unable to function in daily activities. [Id.]. As a result, Ms. Allen opined that the Plaintiff was incapable of working in any capacity and may never fully recover from such symptoms due to the severity and longevity of her abusive past. [Tr. 17].

The ALJ also considered a consultative evaluation performed by Mary Barker, M.S., in March 2010. [Id.]. Ms. Baker reported that while the Plaintiff had been in counseling, she had not been hospitalized for emotional problems. [Id.]. The Plaintiff reported she had attempted suicide in the past due to experiencing abuse, that she cries a lot but not as much recently, and

10

that she continues to feel anxious, jumpy, and hypervigilant. [Id.]. The Plaintiff also related that she spends her days watching television and can do the grocery shopping. [Id.]. Ms. Baker diagnosed the Plaintiff with post-traumatic stress I disorder, in partial remission, and opined that the Plaintiff's ability to understand, remember, and adapt was not significantly impaired and that her ability to sustain concentration and persistence and interact socially was mildly impaired. [Id.].

The ALJ concluded by assigning great weight to the opinion of the state agency psychologist,[2] who's opinion he found consistent with the overall evidence of record, little weight to Ms. Allen's opinion because it was not consistent with the Plaintiff's treatment records, and to the extent that Ms. Baker's opinion supported the Plaintiff's mental residual functioning capacity, the opinion was given greater weight. [Tr. 18].

Based upon the foregoing discussion, the Court finds that the ALJ's decision lacks any specific findings or citation to evidence that demonstrates that the Plaintiff is capable of functioning independently outside the area of her home. With the exception of the Plaintiff reporting to Ms. Baker that she can grocery shop and Ms. Baker's opinion that the Plaintiff is only mildly impaired in her social interactions, it is unclear to the Court as to which medical evidence discussed by the ALJ provides substantial evidence that the Plaintiff does not satisfy "paragraph C." The Court has thoroughly reviewed the medical evidence of record and finds that treatment notes are replete with instances where the Plaintiff experienced difficulty leaving her home alone due to anxiety. The Commissioner concedes as much. [Doc. 18 at 5].

---

[2] The state agent made the following findings: (1) the Plaintiff is able to understand and remember simple instructions but cannot understand and remember detailed instructions; (2) the Plaintiff is able to carry out short and simple instructions but not detailed instructions and is able to maintain concentration and attention for periods of at least two hours; (3) the Plaintiff is able to perform best in situations that do not require on-going interaction with the public; and (4) the Plaintiff is able to be aware of normal hazards and take precautions. [Tr. 326].

11

For example, treatment notes indicate that the Plaintiff has suffered from post-traumatic stress disorder and major depressive disorder since 2002 after experiencing repeated episodes of abuse. [Tr. 380-92]. After moving from California to Tennessee in 2009, the Plaintiff began receiving regular treatment and therapy from Cherokee Health Systems at which time she reported leaving her home only twice a week. [Tr. 282]. Between 2009 and 2010, the Plaintiff repeatedly indicated that she felt anxious leaving her home, she only felt safe when she was home, and that she did not venture out much because she did not trust people. [Tr. 275-76, 278, 282, 342]. Through therapy, the Plaintiff was encouraged to try to go out more as well as work on being more assertive and setting boundaries in her life to help cope with her anxiety. [Tr. 276, 340-41].

The Court finds several problems with the Commissioner's argument that the ALJ's decision is nonetheless supported by substantial evidence. First, while the Commissioner concedes that treatment notes indicate instances where the Plaintiff experienced difficulty functioning independently outside of her home, the Commissioner points out that despite the Plaintiff's social anxiety, in May 2003, the Plaintiff reported walking on the streets, visiting a library, and using public transportation in San Francisco, as well as traveling back to California, presumably alone, for her son's wedding in November 2010. [Doc. 18 at 5-6 (citing Tr. 432, 525-26)]. The Commissioner submits that although this evidence was nowhere in the ALJ's decision, the Court may consider it. The Court finds, however, that the Commissioner's argument, at best, presents a conflict in the evidence regarding the Plaintiff's independence, which case law directs is for the ALJ to resolve, not the Court. See Walter, 127 F.3d at 528. The Court also observes that while the ALJ need not comment on every piece of evidence in the record for his decision to stand, there must be some indication that he at least considered the

evidence as a whole in reaching his conclusion. See Boseley v. Comm'r of Soc. Sec., 397 F. App'x 195, 199 (6th Cir. Sept. 30, 2010). Here, there is no such indication that the ALJ considered the evidence cited by the Court or the Commissioner.

Second, the Commissioner cites to other activities the Plaintiff engaged in outside of her home: in February 2010, the Plaintiff reported that she had spent the holidays with her boyfriend's family and that it went well; in June 2011, she vacation with her boyfriend's sisters and enjoyed herself; and in July 2011, she reported spending the Fourth of July with her boyfriend's family. [Doc. 18 at 6 (citing Tr. 517-18, 521, 525-26)]. However, in each instance, the Plaintiff was clearly anything but by herself. Thus, this evidence cannot be said to demonstrate that the Plaintiff is capable of functioning independently outside of her home.

Accordingly, the Court finds that the ALJ's conclusion that the Plaintiff does not meet Listing 12.06C is not supported by substantial evidence. Moreover, the Court finds that the ALJ's error was not harmless: "[i]n this case, correction of such an error is not merely a formalistic matter of procedure, for it is possible that the evidence [the Plaintiff] put forth could meet [Listing 12.06]." Reynolds, 424 F. App'x at 416. Thus, the Court will recommend that this case be remanded to the ALJ to reconsider whether the Plaintiff meets Listing 12.06C. The Court also notes that upon remand, the correct legal standard the ALJ is to apply is whether the Plaintiff has a "complete inability to function *independently* outside the area of the home," which is a different standard than the one articulated by the ALJ in his decision. See Page v. Astrue, No. 11-CV-12254, 2012 WL 4210513, at *7 (E.D. Mich. Sept. 20, 2012) (remanding the case because the ALJ provided no discussion or citation for his lone statement that "the record does not disclose a complete inability to function outside the home" and finding that the language set forth in Listing 12.06C was different from the ALJ's formulation).

13

B.  **Social Functioning**

The Plaintiff also challenges the ALJ's finding regarding her ability in social functioning. [Doc. 12 at 14]. Specifically, the Plaintiff argues that the ALJ's conclusion that she can only engage in casual interaction with others is inconsistent with the ALJ's finding that she has moderate to marked limitations in this category. [Id.]. The Plaintiff cites to various case law where the courts have held that restricting a claimant to occasional or infrequent contact with others reflects a mild to moderate limitation in social functioning, which is different from the ALJ's moderate to marked finding. [Id. at 15].

The Commissioner maintains that the ALJ's restriction of casual interactions accurately reflects the Plaintiff's moderate to marked limitations in social functioning and likewise cites to supporting case law. [Doc. 18 at 9].

The Court observes that the Plaintiff is challenging the ALJ's finding regarding the second function of the "paragraph B" criteria under Listing 12.04[3] and 12.06, *i.e.*, whether the Plaintiff has "marked difficulties in maintaining social functioning." The Court finds that at this juncture of the case, it is not necessary to reach the merits of this issue because it requires consideration of the Plaintiff's ability to function independently. The regulations provide, in pertinent part, that in considering a claimant's ability in social functioning under "paragraph B," an adjudicator must consider the claimant's capacity to interact independently with others and further provides that a fear of strangers or social isolation may demonstrate impaired social functioning. 20 C.F.R. Pt. 404, Subpt. P, App. 1 (Listing 12.00). Thus, the ALJ's reevaluation of the medical evidence of record concerning the Plaintiff's ability to function independently

---

[3] The "paragraph B" criteria cited earlier by the Court in regard to Listing 12.06 are the same for Listing 12.04.

outside of her home pursuant to "paragraph C," may have an effect on the ALJ's "paragraph B" findings. Although the ALJ's "paragraph B" findings may not change at all upon remand, addressing the issue now would be premature. If the Plaintiff remains unsatisfied with the conclusion reached by the ALJ thereafter, the Plaintiff is free to appeal the issue again to the Court.

## VI. CONCLUSION

Therefore, it is hereby **RECOMMENDED**[4] that Plaintiff's Motion for Judgment on the Pleadings [**Doc. 11**] be **GRANTED in part** and **DENIED in part**, and that the Commissioner's Motion for Summary Judgment [**Doc. 17**] be **DENIED**. The Court recommends that this case be **REMANDED** to the ALJ to: (1) determine and explain, supported by citation to the record, whether the Plaintiff satisfies Listing 12.06C, including but not limited to the Plaintiff's complete ability or inability to function independently outside of the home; and (2) whether the ALJ's determination as to Listing 12.06C affects the ALJ's prior determination as to 12.06B and 12.04B regarding the Plaintiff's ability or inability in social functioning.

Respectfully submitted,

    s/ C. Clifford Shirley, Jr.
United States Magistrate Judge

---

[4] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).